**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>Plaintiff,<br><br>v.<br><br>Johnny Pete Kelly,<br><br>Defendant. | No. CR-12-01057-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendant's Motion to Suppress Defendant's Statements for Lack of Voluntariness (Doc. 28) and Motion to Suppress Evidence Obtained Pursuant to Search Warrant and Subsequent Statements (Doc. 19). For the reasons outlined below, the Motion to Suppress Statements is denied and the Motion to Suppress Evidence is granted in part and denied in part.

## FACTUAL BACKGROUND

On September 17, 2011, the Glendale Police Department (the "Police") submitted an application for a search warrant to the Maricopa Superior Court to search Defendant Johnny Pete Kelly's apartment. The Police executed the warrant on the same day and seized a firearm, ammunition and drugs from Kelly's bedroom closet. Kelly was not arrested at the time of the search because he was a witness in the ongoing homicide investigation.

The affidavit for the search warrant set forth the following facts. On September 17, 2011, Police officers responded to a shooting homicide in the parking lot of an apartment complex in Glendale, Arizona. (Doc. 19-1 at 11.) Kelly, two Native American

males, and the victim's uncle were drinking with the victim before the shooting. (*Id.*) The two Native American males and victim had gotten into an argument after which the two males went into apartment #122. (*Id.* at 12.) The victim's uncle then heard the three gunshots that killed the victim, but did not see the shooter. (*Id.*) After the uncle told officers that the suspect was in apartment #122, officers entered and encountered three Native American males along with a fourth who arrived shortly thereafter. (*Id.* at 11.) Officers also went to apartment #124 after being informed that Kelly and his mother resided there. (*Id.* at 12.) Kelly's mother initially told them that Kelly was not there but sometime thereafter told officers that he was indeed in the apartment. (*Id.*) Officers then secured apartment #124 along with #122 because of the mother's inconsistent statements as to Kelly's whereabouts. (*Id.*)

After officers secured the premises, Police Detective Jarrod Smith interviewed Kelly about the homicide in his police vehicle. (*Id.*) Kelly recalled that he was drinking outside with the victim and two Native American males, and an argument arose between them. (*Id.*) After the two males went into apartment #122 and while Kelly was still with the victim, another male came out from the shadows and shot at both of them. (*Id.*) As they ran away from the shooter, the victim was shot while Kelly avoided the gunfire. (*Id.*)

Later that day, Police Detective Brad McMillan submitted this affidavit with an application for a search warrant for apartments #122 and #124, a bullet-ridden car, two mobile phones discovered at the scene, and the persons of Kelly and four other individuals who were present during the incident. (*Id.* at 3-4.) The affidavit requested a search of Kelly's apartment due to his mother's inconsistent statements about his whereabouts. (*Id.* at 13.) The Court granted the search warrant.

After searching Kelly's apartment that day, the Police found a loaded .38 caliber revolver handgun, ammunition and a baggie of marijuana in Kelly's bedroom closet. (Doc. 25 at 3.) On September 18, 2011, Kelly spoke with Detective Smith and revealed that he was the intended target of the shooting. (Doc. 32 at 4.) He also identified the shooter as a rival pimp whom he knew. (*Id.*)

The case agent, Detective Eric Holmstedt, contacted Kelly several times thereafter to discuss the homicide. (*Id.*) However, Kelly was reluctant to meet because he was concerned about him or his mother being arrested for possession of the firearm and the marijuana which were found in his apartment during the search. (*Id.*) During telephone conversations with Holmstedt, Kelly acknowledged that those items were found in his bedroom. (*Id.*) Holmstedt reassured him that he only wanted to discuss the homicide and did not intend to pursue possession charges. (*Id.*) Kelly then agreed to meet with Holmstedt at Kelly's apartment. (*Id.*)

On May 16, 2012, Kelly was indicted and charged with illegal possession of a firearm and five rounds of ammunition. He brings these Motions to suppress the firearm, ammunition and "all other items seized" from his apartment as well as the statements he made to Detective Holmstedt about owning those items. The Court held an evidentiary hearing on January 23, 2013.

**ANALYSIS**

**I. VOLUNTARINESS OF DEFENDANT'S STATEMENTS**

Defendant Kelly argues that his statements to Detective Holmstedt acknowledging the gun and drugs found in his apartment were involuntary and therefore, those statements should be suppressed. He does not argue that he was "in custody" nor does he argue that he was not given his *Miranda* rights and warnings.

A confession is involuntary if it is not "the product of a rational intellect and a free will." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (citing *Townsend v. Sain,* 372 U.S. 293, 307 (1963)). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Beaty v. Schriro*, 509 F.3d 994, 999 (9th Cir. 2007) (citing *Haynes v. Washington,* 373 U.S. 503, 513–14 (1963)). Moreover, a statement may be considered involuntary if it is "extracted by any sorts of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id.* (citing *Hutto v. Ross*, 429 U.S.

28, 30 (1976)).

This broadly-stated rule has not been applied to invalidate all statements made by a suspect in response to a promise made by law enforcement personnel. *United States v. Okafor*, 285 F.3d 842, 847 (9th Cir. 2002) ("Inducements to cooperate are not improper and do not render a suspect's statement involuntary unless under the total circumstances it is plain that they have overborne the free will of the suspect."); *United States v. Leon Guerrero,* 847 F.2d 1363, 1366 (9th Cir. 1988); *United States v. Leon Guerrero,* 847 F.2d 1363, 1366 (9th Cir. 1988) ("The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances."); *see also Fare v. Michael C.*, 442 U.S. 707, 727 (1979) (holding that such inducements must rise to the level of being "threatening or coercive"). The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age. *Brown,* 644 F.3d at 979 (citing *Yarborough v. Alvarado,* 541 U.S. 652, 668 (2004)). The Government bears the burden of proving that Kelly's statements were voluntary and must do so by a preponderance of the evidence. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

Kelly contends his statements acknowledging the gun and drugs seized from his apartment were induced by Holmstedt's promise that Kelly would not be prosecuted for possession if he cooperated in the homicide investigation. At the evidentiary hearing, Holmstedt testified that Kelly was hesitant to meet with him to discuss the homicide because of the possession issue. Holmstedt briefly mentioned the contraband to allay Kelly's concerns at which time Kelly acknowledged that it was found in the bedroom closet of his apartment. Holmstedt told him not to worry about the issue and that it was not his *intention* to pursue charges for possession. This Circuit has held that a promise of leniency is not coercive in every circumstance. *See United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (holding that where defendant testified that agents told him that "if I knew anything, now is the time to tell that. . . . [and that t]hey can tell the prosecutor

to give me little or no time," such an inducement to cooperate was insufficient to establish involuntariness); *Okafor*, 285 F.3d at 847 (holding that promise by agent that defendant's cooperation would help him "avoid a lengthy prison sentence" was not "sufficiently compelling to overbear" defendant's free will). The method in which Holmstedt alleviated Kelly's fears did not overbear Kelly's will such that he was compelled to confess ownership. Indeed, at no point did Kelly admit to Holmstedt that he owned the contraband. Further, Holmstedt did not promise that he would *never* pursue charges but that that was not the focus of his meeting with Kelly.

In an unpublished case, *Trethewey v. Farmon*, 39 F. App'x 591, 594 (9th Cir. 2002), this Circuit held that an agent's "attempt[ ] to deflect [a defendant's] attention away from the penal consequences of an admission" and promise to assist the defendant in avoiding jail time was simply a "'good cop' effort to establish a relationship . . . [that] reach[ed] for conversation" but was not coercive. Similarly, Holmstedt was trying to place Kelly at ease so that he would cooperate in the homicide investigation. Kelly had the opportunity to passively listen to Holmstedt's offer and agree to discuss the homicide without making any admissions. Their conversations took place in the initial moments of a telephone conversation and not in coercive surroundings where Kelly could have felt compelled to confess. Accordingly, Kelly's statements were voluntary under the circumstances.

## II. EVIDENCE OBTAINED DURING THE SEARCH

### A. Probable Cause

Defendant Kelly seeks to suppress the gun, ammunition and all other items seized by the Police when executing a search warrant of his apartment. Kelly contends that this evidence constitutes fruits of an illegal search and should be excluded from trial. *See Herring v. United States*, 555 U.S. 135, 139 (2009). He alleges that the warrant used to search his apartment was unsupported by probable cause and lacked specificity in violation of his rights under the Fourth and Fourteenth Amendments.

The Fourth Amendment requires that search warrants must be based "upon

probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." Probable cause is a reason to "believe that the legitimate object of a search is located in a particular place." *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006) (internal citation omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978).

The duty of a reviewing court is simply to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). The task of the issuing judge is "to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Furthermore, "in reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). When interpreting seemingly innocent conduct, the court issuing the warrant is entitled to rely on the training and experience of police officers. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995); *United States v. Arrellano–Rios,* 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause."). In borderline cases, preference will be accorded to warrants and to the decision of the judge issuing it. *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011).

Kelly argues that the search warrant did not describe why evidence related to the homicide would be found in his apartment #124. He was a witness to the homicide and not identified as a suspect in the affidavit. Kelly contends that there is nothing he said during his on-site police interviews that would have created suspicion. However, a reasonable search does not require that the owner of the property searched is a suspect in

the crime but that there is *reasonable* cause to believe that evidence is located on the property. *See Zurcher,* 436 U.S. at 556. As Kelly alleges, he could have been an innocent witness. That does not mean there was no evidence related to the homicide located in his apartment. The affidavit points out that Kelly had been drinking with the victim before the shooting occurred. He then immediately fled the scene after the homicide and retreated into his apartment. The warrant was issued and executed on the same day as the shooting. At the time, the relationship between Kelly, the shooter and the victim was unclear although Kelly was not listed as a suspect in the warrant application. the issuing judge could have reasonably determined that Kelly transported relevant evidence, including a firearm, into his apartment.

In the warrant's affidavit, the Police requested that Kelly's apartment be subject to search because his mother had given inconsistent statements as to his whereabouts after the crime. (Doc. 19-1 at 11.) The issuing judge did not have to rely solely upon the Police's rationale for authorizing the search. Rather, the judge had a substantial basis to allow the search based upon Kelly's flight from the crime scene combined with his mother's inconsistent statements. The affidavit described Kelly at least as a witness to the homicide. Moreover, it is reasonable for the judge to have relied somewhat on the Police's belief that evidence could be found in Kelly's apartment even if he had displayed "seemingly innocent conduct." *Gil*, 58 F.3d at 1418. Thus, the affidavit was sufficient to support probable cause for the issuance of the search warrant. *See United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds . . . differ on the question whether a particular affidavit establishes probable cause, . . . the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination.") (internal quotations omitted).

### B. Sufficient Particularity

Kelly asserts that the search warrant was insufficiently particular as to what items could be searched and seized from his apartment. The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting

their discretion and providing specific guidance as to what can and cannot be searched and seized. *Adjani*, 452 F.3d at 1147. However, the level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought. *Id.* at 1147-48. In determining whether a warrant is sufficiently particular, the court considers one or more of the following factors:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Mann*, 389 F.3d 869, 877-78 (9th Cir. 2004) (citing *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986)).

Here, the warrant authorized the search and seizure of several categories of items with potential to shed light on the homicide, the suspect and the victim. The Police requested and were granted the warrant on September 17, 2011 – the same day as the homicide. At the time, the Police were still initiating their investigation and had conflicting and limited witness reports of the incident. It is within this context that the sufficiency of the warrant's affidavit must be analyzed.

There was probable cause to believe that items found within many of the categories would aid the investigation. For example, mobile phones could contain communications that would lead to the suspect; officers had found two phones at the crime scene near the victim's body. The Police requested shoes because the landscape near the body was disturbed, implying a flight on foot by the suspect. (Doc. 19-1 at 13.) Significantly, the warrant limited the categories to evidence relevant to the homicide. The warrant listed books and notes "relating to the state of mind of the victim and/or suspect." The identifying information to be1 seized from electronic devices was of "any persons who may be involved in the murder of the victim." The oral swabs for DNA comparison were to be taken from the five people who were involved in or witnessed the incident.

Kelly contends that some of the categories were overbroad. He refers to the

authorization for the seizure of "any and all firearms, ammunition, gun cleaning kits, holsters, or receipts for guns, expended projectiles and cartridge casings." Kelly alleges that this would allow officers to seize any firearm at all, irrespective of whether it was connected to the homicide. However, the investigating officers had not yet examined the bullets that had pierced the victim or any other evidence that would have narrowed their search. They could not have been more specific on the first day of their investigation regarding the type of firearms to be seized. Furthermore, the Police did not request all weapons but limited their search to firearms. Their request was not overbroad.

Nevertheless, other categories of items may have been lacking in particularity. The warrant authorized the search of "trace and biological evidence" and "clothing with evidence attached to it" from the apartments. There was probable cause to search apartments #122 and #124 for these items because the Police had found witnesses and potential suspects for the homicide residing there. The warrant also authorized the search of various types of digital media and records. Some of these requests were limited to contact information of "any persons who may be involved in the murder of the victim" or phone records from the two mobile phones found at the crime scene. The warrant listed any keys necessary to access "the computers, cellular telephone equipment, storage devices or data", implicitly referring to those devices containing the contact information.

Other categories relating to digital media were not so limited. Requests for "[the] forensic examination of any digital media from contents of digital media cards, cellular telephones, and computers" and for "all digital media . . . from the digital devices" appear overbroad. The only limitation on the digital media was the location where it was to be found. A forensic examination of digital media should be granted when there is probable cause to search the computer or storage device in which it is contained. *See United States v. Battershell*, l457 F.3d 1048, 1049-50 (9th Cir. 2006). These categories could have been restricted to devices owned by the five named individuals in the warrant or to those persons residing in the apartments as well as to a specific time period or types of electronic files.

When a search warrant is overbroad, partial suppression is allowed under the "doctrine of severance, which allows a court to strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment." *U.S. v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005) (internal quotation and citation omitted). Severance means that "[o]nly those articles seized pursuant to the invalid portions need be suppressed." *United States v. Gomez–Soto,* 723 F.2d 649, 654 (9th Cir. 1984). "The doctrine of severance requires that identifiable portions of the warrant be sufficiently specific and particular to support severance." *Sears,* 411 F.3d at 1130 (citing *Spilotro*, 800 F.2d at 967 (holding that a warrant is more amenable to severance when items are set forth in textually severable portions)). The relative size of the valid and invalid portions of a search warrant is important in deciding whether severance is appropriate. *See Spilotro*, 800 F.2d at 967 (declining to sever and allow seizure of items which were only a relatively insignificant part of an otherwise sweeping search); *Gomez–Soto*, 723 F.2d at 654 (allowing severance when only one of thirteen descriptions was insufficiently particularized).

Severance of the offending categories of digital media is appropriate here. The search warrant separately listed the overbroad categories of forensic examination and all digital media which constituted two of the nineteen categories. They are easily severable and were not the focus of the search. Complete suppression of evidence is only appropriate "when a warrant is wholly lacking in particularity." *Sears*, 411 F.3d at 1129. The other categories were limited by reference to "alleged criminal activity", to the witnesses and suspects identified near the crime scene, and to evidence related to items found at the crime scene. *See United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995). Thus, they are sufficient in particularity. Any digital media seized from Kelly's apartment pursuant to the two overbroad categories will be suppressed.

Further, the Court will sever the category of "books, records, receipts, notes, ledgers and other papers . . . relating to the state of mind of the victim and/or suspect" from the search warrant. There was no reasonable cause for the magistrate to conclude

these items would be located or found in Kelly's apartment. *See Zurcher,* 436 U.S. at 556. He was not listed as a suspect or intended victim in the warrant affidavit. Accordingly, the Court will suppress any books or records seized from Kelly's apartment pursuant to the warrant. However, the firearm, ammunition, and other evidence seized from his apartment will not be suppressed for the lack of particularity of the search warrant.

### C. Good Faith Exception

Even if the search warrant had been found to lack probable cause or sufficient particularity, the exclusionary rule would not apply here. The officers acted in reasonable reliance on the search warrant and it was issued by a detached and neutral judge. *United States v. Leon*, 468 U.S. 897, 920-22 (1984). Because the officers relied in good faith on the warrant's validity, this court will not suppress the evidence obtained from Kelly's apartment other than the digital media described above. *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994).

"For the good faith reliance exception to apply, the officers must have relied on the search warrant in an objectively reasonable manner." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007). Kelly contends that the search was per se unreasonable because the affidavit was so lacking in indicia of probable cause that no reasonable officer could rely on it in good faith. *Id.* (citing *Leon*, 468 U.S. at 923–26). For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched. *United States v. Chavez–Miranda,* 306 F.3d 973, 978 (9th Cir. 2002). At the time the warrant was issued, the police knew that Kelly was at least a witness to the homicide and that he had immediately retreated into his apartment after the incident. Furthermore, his mother had falsely stated to the Police that he was not in the apartment when in fact, he was. It was reasonable to search for evidence at Kelly's apartment.

Kelly also alleges that the warrant was so facially deficient that officers could not reasonably rely on it. *See Crews,* 502 F.3d at 1136 (9th Cir. 2007); *United States v.*

*Michaelian*, 803 F.2d 1042, 1046 (9th Cir. 1986) (citing *Leon*, 468 U.S. at 923). Where the warrant is facially deficient, "[o]fficers poised to conduct a search should be able to ascertain that such warrant fails to offer sufficiently detailed instruction and instead leaves them guessing as to their task." *United States v. Towne*, 997 F.2d 537, 549 (9th Cir. 1993) (internal citation omitted). "[A] warrant is facially defective when it omits or misstates information specifically required to be contained therein, i.e., the place to be searched, and the persons or things to be seized." *United States v. Clark*, 638 F.3d 89, 102 (2d Cir. 2011); *Kow*, 58 F.3d at 428 (determining that a warrant "encompassing essentially all documents on the premises" was facially deficient).

The warrant was not facially deficient. It specifically identified Kelly's apartment and described, in detail, the nineteen categories of items to be searched at that location. Several of the categories had specific limitations as to the ownership, type or content of the items to be seized, providing sufficient guidance to the officers executing the search. Thus, the officers acted reasonably and in good faith in relying upon the search warrant.

## CONCLUSION

Defendant Kelly's statements regarding his ownership of the firearm and the drugs in his apartment were voluntary and were not improperly induced by Detective Holmstedt. The firearm, ammunition, and other evidence seized at Kelly's apartment were obtained pursuant to a valid search warrant. However, digital media, books and records obtained pursuant to the overbroad categories in the warrant will be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Defendant's Statements for Lack of Voluntariness (Doc. 28) is **denied**.

///
///
///
///
///
///

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence Obtained Pursuant to Search Warrant and Subsequent Statements (Doc. 19) is **granted** in part and **denied** in part**.**

**Dated this 14th day of February, 2013.**

*G. Murray Snow*
United States District Judge